ELMORE, Judge, dissenting.
I respectfully disagree with the majority's conclusion that DOT's breach of duty was a proximate cause of the accident. Although the majority rejects DOT's challenge to certain findings of fact by summarily finding competent record evidence to support them, I agree with DOT that competent evidence is lacking.
I would reverse the Commission's decision for two reasons: (1) DOT's breach of duty was not an actual cause of plaintiffs' injuries; and (2) even if actual cause was established, I would find that the intentional criminal acts of Stasko and Atkinson could not have been reasonably foreseen by DOT and, therefore, constitute an independent, intervening cause absolving DOT of liability.
Pursuant to N.C. Gen.Stat. § 143-293, a party may appeal from the decision of the Commission to the Court of Appeals. "Such appeal *186 shall be for errors of law only under the same terms and conditions as govern appeals in ordinary civil actions, and the findings of fact of the Commission shall be conclusive if there is any competent evidence to support them." N.C. Gen.Stat. § 143-293 (2013). "Competent evidence is evidence 'that a reasonable mind might accept as adequate to support the finding.' " In re Adams, 204 N.C.App. 318, 321, 693 S.E.2d 705, 708 (2010) (quoting Eley v. Mid/East Acceptance Corp. of N.C., 171 N.C.App. 368, 369, 614 S.E.2d 555, 558 (2005) ). "We review the Full Commission's conclusions of law de novo. " Holloway v. N.C. Dep't of Crime Control & *710 Pub. Safety, 197 N.C.App. 165, 169, 676 S.E.2d 573, 576 (2009) (citations omitted).
To satisfy the causation element of a negligence claim, the claimant "must prove that defendant's action was both the cause-in-fact (actual cause) and the proximate cause (legal cause)[.]" State v. Lane, 115 N.C.App. 25, 28, 444 S.E.2d 233, 235 (1994). "If a plaintiff is unable to show a cause-in-fact nexus between the defendant's conduct and any harm, our courts need not consider the separate proximate cause issue of foreseeability." Hawkins v. Emergency Med. Physicians, --- N.C.App. ----, ----, 770 S.E.2d 159, 165 (2015). "The standard for factual causation ... is familiarly referred to as the 'but-for' test, as well as a sine qua non test. Both express the same concept: an act is a factual cause of an outcome if, in the absence of the act, the outcome would not have occurred." Restatement (Third) of Torts: Phys. & Emot. Harm § 26 (2010).
"Proximate cause is a cause which in natural and continuous sequence, unbroken by any new and independent cause, produced the plaintiff's injuries, and without which the injuries would not have occurred[.]" Lord v. Beerman, 191 N.C.App. 290, 294, 664 S.E.2d 331, 334 (2008) (quoting Hairston v. Alexander Tank & Equip. Co., 310 N.C. 227, 233, 311 S.E.2d 559, 565 (1984) ) (quotations omitted). "[E]vidence is insufficient if it merely speculates that a causal connection is possible." Id. at 295, 664 S.E.2d at 335. "An inference of negligence cannot rest on conjecture or surmise.... This is necessarily so because an inference is a permissible conclusion drawn by reason from a premise established by proof." Sowers v. Marley, 235 N.C. 607, 609, 70 S.E.2d 670, 672 (1952) (citations omitted). "Proximate cause is an inference of fact to be drawn from other facts and circumstances." Hairston, 310 N.C. at 234, 311 S.E.2d at 566. "[T]he general rule of law is that if between the negligence and the injury there is the intervening crime or wilful and malicious act of a third person producing the injury but that such was not intended by the defendant, and could not have been reasonably foreseen by it, the *187 causal chain between the original negligence and accident is broken." Ward v. R.R., 206 N.C. 530, 532, 174 S.E. 443, 444 (1934) (citations and quotations omitted).
The majority concludes that there is competent evidence to support finding of fact number twenty, which states, "Mr. Marceau testified that in his expert opinion, and the Commission finds, that had the Riverpointe intersection been properly signalized, the crash on 4 April 2009 would not have occurred. Mr. Marceau based his opinion on the lack of visibility of the Riverpointe intersection and the driving behavior of Mr. Stasko prior to the crash." (emphasis added.) I disagree. The Commission's finding, and this Court's approval, that but for DOT's failure to install a traffic signal, this collision would not have occurred is speculative and is not supported by any competent evidence. DOT's omission was not the actual cause of plaintiffs' injuries.
Here, Mr. Marceau, a forensic traffic engineer, testified "as an expert in the area of civil engineering, traffic crash investigation, traffic crash reconstruction, and human factors as it pertains to automobile accident investigation." Yet he did not base his testimony on scientific, technical, or other specialized knowledge that would assist the trier of fact to understand the evidence. See N.C. Gen.Stat. § 8C-1, Rule 702 (2013). Moreover, his testimony was not based upon sufficient facts or data, and it was not the product of reliable principles and methods that were reliably applied to the facts of this case. See id. Instead, Mr. Marceau testified as follows:
Q. [W]hat opinions and conclusions did you reach?
A. My-my conclusions were that this traffic signal, it should've been here a long time before this crash ever happened, that-and further, had the traffic signal been in place before the crash, that the crash would have been prevented. Had the traffic signal been in place and been operating, Ms. Furr would've received a green light, and pulled forward on a green light, and Mr. Stasko would've stopped for a yellow or a red, and the crash wouldn't have occurred.
Q. How do you know that Mr. Stasko would've-what-what in your research- *711 what in your investigation would lead you to the conclusion that Mr. Stasko would have stopped at that stoplight versus running through the stoplight at the speed he was going? *188 A. Several things during my investigation. Mr. Stasko and-and Ms. Atkinson had both stopped at stoplights prior to this intersection. There was no history of them running stoplights. They'd been stopping at-at traffic signals, and I-I think I heard the detective testify this morning the kids in the car were horsing around, and goofing off, communicating junk with each other, and-and they were stopping at all the traffic signals. I-I-I didn't-I never had a doubt that they would've stopped at this traffic signal.
On cross-examination, regarding Mr. Marceau's opinion above, counsel for DOT asked, "But that's not based on any scientific evaluation, is it?" Mr. Marceau responded, "It's based on what I've read from affidavit, and testimony, and from hearing the officer testify."
In Young v. Hickory Business Furniture, our Supreme Court explained that when "expert opinion testimony is based merely upon speculation and conjecture, it can be of no more value than that of a layman's opinion.... Indeed, this Court has specifically held that 'an expert is not competent to testify as to a causal relation which rests upon mere speculation or possibility.' " 353 N.C. 227, 230, 538 S.E.2d 912, 915 (2000) (quoting Dean v. Coach Co., 287 N.C. 515, 522, 215 S.E.2d 89, 94 (1975) ).
Like the expert witness in Young, Mr. Marceau's "responses were forthright and candid, and demonstrated an opinion based solely on supposition and conjecture." Young, 353 N.C. at 233, 538 S.E.2d at 916-17. In Young, our Supreme Court held that such evidence was incompetent and insufficient to support the Industrial Commission's findings of fact. Id. at 233, 538 S.E.2d at 917. Likewise, here the evidence was incompetent to support the Commission's finding that, had the intersection been properly signalized, the crash would not have occurred.
John Flanagan, who testified as an expert in accident reconstruction and engineering, performed several calculations about the effect of different speeds combined with perception/reaction time on the total stopping distance. In his opinion, he stated that it would be possible for someone driving at a speed of eighty-six miles per hour to stop his vehicle before entering the intersection, that he did not know why Stasko did not stop, and that the onset of a driver's perception/reaction time would be delayed if he was not being attentive to what is going in front of him. Detective Jesse Wood also prepared a collision reconstruction summary and testified to his findings, which incorporated drag factor, deceleration rate, perception/reaction time, and stopping distance.
*189 Detective Wood found "at 86 miles per hour, using a deceleration rate of .71 that Stasko could have brought his vehicle to a stop in 536 feet[,]" which is short of the estimated sight distance of 586 to 650 feet from the crest of the hill to the intersection. Mr. Marceau agreed that, based on Detective Wood's calculations, if the driver had a one-and-a-half second perception/reaction time, mathematically, the driver could have stopped prior to the collision. Mr. Marceau noted, though, that "in the real world situation where we have multiple things to pay attention to," the perception and reaction time may be longer, and one-and-a-half seconds is not appropriate. He stated, "I think even my numbers show that if he had acted faster than, I think I said 2.7 or 2.8 seconds, and he slammed on his brakes, he could've avoided the crash, and he could've skidded through a stop, and brought his car to a stop." As the majority correctly points out, the Commission is the trier of fact and may choose how much weight to place on testimony. Nevertheless, the evidence must still be competent to support the Commission's findings.
Regarding proximate cause, the majority concludes that there is competent evidence to support finding of fact number twenty-four, which states,
24. Given defendant's stipulation that a signal was needed, the lack of sight distance to and from the intersection, the speed limit of the roadway, the size of the intersection, and the number of previous similar accidents at this intersection, the *712 Commission finds that the accident that resulted in the deaths of Cynthia Furr, McAllister Furr Price and Hunter Holt was a foreseeable consequence of defendant's stipulated breach of duty in failing to install a traffic signal at that intersection.
In attempting to show why the Commission's decision is supported by competent evidence, the majority states,
Had there been a properly functioning traffic signal, Stasko would have had approximately sixteen additional seconds to notice the intersection and initiate deceleration. It was the province of the Commission, as trier of fact, to make a determination based on the facts, law, and common sense, concerning whether Stasko's high-speed racing behavior indicated that he would have completely ignored a properly functioning traffic signal....
Further, had the signal been red for traffic on Highway 49, Furr would not have needed to stop in the intersection *190 to wait for eastbound Highway 49 traffic to clear. Had the signal been green for Highway 49 traffic, Furr would have been safely stopped on Riverpointe Drive awaiting the signal change. We find the Commission's finding that DOT's breach of duty was a proximate cause of the accident to be supported by the evidence[.]
The determinative factor is not whether Stasko would have obeyed or ignored the traffic signal but whether the lack of a traffic signal was the proximate cause of the collision. As the Deputy Commissioner found, whether "it is reasonable to assume that [Stasko] would have slowed and prepared to stop because of the signal" is "speculative and not germane to the issue of foreseeability."
Had there been a properly functioning traffic signal, neither this Court nor any expert in North Carolina can say that, based solely on that premise, Stasko would have had sixteen additional seconds to initiate deceleration. What if the traffic signal, conceivably visible one-and-a-half miles from the intersection, or for twenty-one seconds based on Stasko's speed, was green? Would Stasko have initiated deceleration? What if Stasko was looking behind for Atkinson's car and did not notice that there was a traffic signal ahead? What if the traffic signal turned yellow at the moment Stasko was cresting the hill, around 650 feet from the intersection? What if Stasko did not decelerate for the yellow light and consequently drove through a "fresh" red light,[4] and Furr immediately drove through the green light on Riverpointe Drive, and their cars collided in the intersection? Would DOT be liable based on the incline of the hill, lack of sight distance, or roadway design?
Mr. Marceau testified, "When people run red lights, it happens-I've-I've actually looked at thousands of-studied numbers on this. It happens in several different batches, but it's typically portions of a second or a second after the light has turned red." He further stated, "They're-they're distracted, not paying attention, whatever. It's not-we just-we just-unless someone's drunk, or high, or something like that, you know, impaired, we just don't have people just running through red lights out in the middle of nowhere." Significantly, the majority admits, "If a properly functioning traffic signal simply could not have prevented an accident, the lack of a traffic signal cannot be a proximate cause of that accident as a matter of law." I contend that is the precise *191 scenario in front of us. No evidence shows that such omission was a cause in fact of the injuries, much less a proximate cause. Gillespie v. Coffey, 86 N.C.App. 97, 100, 356 S.E.2d 376, 378 (1987).
The findings indicate that Stasko did not intentionally hit the Furr car and that Stasko did not engage his brakes. The findings do not indicate that there was a vehicle in the right-hand lane preventing Stasko from swerving right. The majority can speculate that "it is, of course, conceivable that the accident would have occurred even had there been properly functioning traffic signals in the intersection. It is conceivable that Stasko would have failed to see the light, or that he would have ignored a red light at the peril of his life. It is also conceivable, and much *713 more likely, that Stasko would have seen a red light and stopped or slowed, avoiding the accident." But that is all we can do-speculate. And that is all that the Commission did.
I also disagree with the majority's holding "that it was reasonably foreseeable that a vehicle speeding toward the intersection, unregulated by any traffic signal, could lead to the type of accident and injury involved in this case." Although the majority maintains that DOT's focus on the criminal nature of Stasko's actions is misplaced and the reason for his speeding is immaterial, the entirety of Stasko and Atkinson's conduct must be analyzed in determining foreseeability. See Ramsbottom v. R.R., 138 N.C. 38, 41, 50 S.E. 448, 449 (1905) (explaining that proximate cause is established if "any man of ordinary prudence could have foreseen that such a result was probable under all the facts as they existed"). The majority states, "The fact that Stasko was speeding, and thus breaking the law, did not render his actions unforeseeable."
Here, however, as the Deputy Commissioner concluded, "foreseeable acts of speeding are those instances where a driver is travelling five to ten miles an hour over the limit, as opposed to more than 30 miles over the posted speed." As explained below, Stasko was not merely speeding. Plaintiff's expert, Mr. Marceau, testified to the following:
A. [Marceau] We-we know that the Atkinson vehicle was behind [Stasko] and to his right. We're not exactly sure where it was.
Q. And could that impact also his-his-the human factors part-his though[t] processes as to whether swerving is the right idea to do, or braking is the right idea, or a combination of the two is the right thing to do?
*192 A. [Marceau] Absolutely. He's-he's been jockeying positions with this other vehicle, changing lanes, forward, backward, around each other for the last one-point-well, 1.5 miles from the traffic signal at Shopton. So he has a moving target around him, much like a pilot flying near another plane. You have to make sure where the other plane is before you change your course, or a (unintelligible), or anybody else in motion.
Stasko was convicted of three counts of involuntary manslaughter, and Atkinson pled guilty to three counts of involuntary manslaughter based on their involvement. The facts establish that Stasko was not only speeding, but racing-"jockeying positions" with a "moving target." Although some speeding is foreseeable, Stasko's erratic and hazardous conduct was not reasonably foreseeable. I note that the law "fix[es] [defendant] with notice of the exigencies of traffic, and he must take into account the prevalence of that 'occasional negligence which is one of the incidents of human life.' " Hairston, 310 N.C. at 234, 311 S.E.2d at 565 (quoting Beanblossom v. Thomas, 266 N.C. 181, 146 S.E.2d 36 (1966) ; citing Restatement (Second) of Torts § 447, comment c (1965)). However, the evidence shows that this was not a simple case of occasional negligence. As the Deputy Commissioner concluded, "it is unreasonable to impute upon [DOT] the duty to protect the general public from any and all intentional criminal acts. It is not possible, nor is it feasible."
In Westbrook v. Cobb, the plaintiff argued that "it need not be shown that defendant could foresee what would happen, nor is it relevant that the eventual consequences ... were improbable. Rather, all plaintiff needs to show is that defendant set in motion a chain of circumstances that led ultimately to plaintiff's injury." 105 N.C.App. 64, 68, 411 S.E.2d 651, 654 (1992). This Court stated that the plaintiff's injury must nonetheless be "the natural result of a continuous sequence of actions set into motion by defendant's initial act[.]" Id. at 69, 411 S.E.2d at 654. We noted, "[P]roximate cause is to be determined on the facts of each case upon mixed considerations of logic, common sense, justice, policy and precedent. [I]t is inconceivable that any defendant should be held liable to infinity for all the consequences which flow from his act, some boundary must be set." Id. at 68-69, 411 S.E.2d at 654 (quoting Sutton v. Duke, 277 N.C. 94, 108, 176 S.E.2d 161, 169 (1970) ) (quotations omitted).
*714 As discussed at the oral argument, if Stasko had been breaking other laws, such as texting or driving while intoxicated, would plaintiffs still argue that the lack of a traffic signal was the proximate cause of the *193 collision? Conceivably, based on the majority's logic, a plaintiff may now argue that a driver who is texting and approaching an unregulated intersection would have been able to avoid a collision if a traffic signal was installed because the driver likely would have had increased sight distance and would have stopped texting in time to stop at a red light. The majority's opinion leaves DOT susceptible to liability that it should not be forced to incur.
As I conclude that there is no competent evidence to support the Commission's findings of fact on foreseeability and proximate cause, I similarly conclude that the conclusions of law listed below are not supported by any other findings of fact.
The Commission entered the following conclusions of law:
2. The issue before the Commission is whether the intervening acts of negligence by Mr. Stasko and Ms. Atkinson are such that they relieve defendant of its liability for its negligence. When considering intervening acts of negligence, the North Carolina Court of Appeals explained, "[t]he first defendant is not relieved of liability unless the second independent act of negligence could not reasonably have been foreseen." Hester v. Miller, 41 N.C.App. 509, 513, 255 S.E.2d 318, 321 (1979) (citation omitted). The court explained further, "[t]he foreseeability standard should not be strictly applied. It is not necessary that the whole sequence of events be foreseen, only that some injury would occur." Id.
....
4. The Commission concludes that the actions of Mr. Stasko and Ms. Atkinson were reasonably foreseeable by defendant. "Experience assures us that [people] do in fact frequently act carelessly, and when such action is foreseeable as an intervening agency, it will not relieve the defendant from responsibility for [its] antecedent misconduct." Murray v. Atl. Coast Line R. Co., 218 N.C. 392, 411, 11 S.E.2d 326, 339 (1940) (citation omitted).
5. The Commission concludes that defendant's stipulated breach of its duty to install a traffic signal at the Riverpointe intersection was a proximate cause of the accident that resulted in the deaths of Cynthia Furr, McAllister Furr Price and Hunter Holt. The Commission *194 concludes that the intervening negligence of Mr. Stasko and Ms. Atkinson was also a proximate cause of the accident, but not the sole proximate cause. As such, defendant is not insulated from liability for its negligence.
I note that the quote in conclusion of law number four represents the opinion of the authors of Harper's Law of Torts and Justice Seawell, dissenting, not our Supreme Court. In conclusion of law number two, the Commission states that the issue is whether the intervening acts of negligence by Stasko and Atkinson relieve DOT of its liability for negligence. However, before determining whether DOT is relieved of its liability, it must first be determined that DOT is liable. In Hester, quoted by the Commission in conclusions of law two and three, this Court stated,
In cases involving rearend collisions between a vehicle slowing or stopping on the road without proper warning signals, and following vehicles, the test most often employed by North Carolina courts is foreseeability. The first defendant is not relieved of liability unless the second independent act of negligence could not reasonably have been foreseen. The foreseeability standard should not be strictly applied. It is not necessary that the whole sequence of events be foreseen, only that some injury would occur.
Hester v. Miller, 41 N.C.App. 509, 513, 255 S.E.2d 318, 321 (1979) (internal citations omitted). I disagree with the application of that foreseeability analysis here. Hester dealt with multiple defendants who were involved in a chain-reaction vehicle collision. Id. at 512, 255 S.E.2d at 320. I believe the decision in Hester is factually distinguishable, and the discussion regarding foreseeability generally in an ordinary negligence case differs from that of foreseeability involving an *715 intervening actor. I find the analysis in Tise v. Yates Construction Company, Inc., relevant here.
In Tise, cited by DOT, police officers responded to a call that unknown persons were tampering with equipment at a construction site. 345 N.C. 456, 457, 480 S.E.2d 677, 678 (1997). When they arrived at the site, the officers did not see any suspects and did not have any information regarding who to contact about the security of the equipment, so they left. Id. Later, four individuals went to the construction site and one of them drove a grader onto the roadway. Id. One of the officers was sitting in his parked patrol car on the roadway and was crushed by the grader. Id. The owner of the construction company claimed that the *195 City, through its police department, negligently handled the initial call, which was a proximate cause of the officer's death. Id. at 459, 480 S.E.2d at 679. Our Supreme Court concluded that the officer's "injuries caused by the criminal acts of third parties ... could not have been foreseeable from the officers' acts of attempting to disable the grader." Id. at 461, 480 S.E.2d at 681. It further stated, "The criminal acts in this case were an intervening cause that relieved the City of any actionable negligence by cutting off the proximate cause flowing from the acts of the agents of the City in attempting to disable the grader." Id. "This superseding cause was a new cause, which intervened between the original negligent act of the City and the injury ultimately suffered[.]" Id.
Here, as in Tise, the third-party criminal acts broke the chain of causation set in motion by DOT's breached duty. Stasko's decision to race another vehicle at eighty-six miles per hour on a residential highway where the speed limit was fifty-five miles per hour and where both drivers had children in their vehicles cut off the proximate cause flowing from DOT's omission.
The majority, in discounting the relevance of Tise, relies on Riddle v. Artis. In Riddle, our Supreme Court stated, " 'The test by which the negligent conduct of one is to be insulated as a matter of law by the independent negligent act of another, is reasonable unforeseeability on the part of the original actor of the subsequent intervening act and resultant injury.' " 243 N.C. at 671, 91 S.E.2d at 896-97 (quoting Butner v. Spease, 217 N.C. 82, 6 S.E.2d 808 (1940) ; citing Beach v. Patton, 208 N.C. 134, 179 S.E. 446 (1935) ).
In Beach, Riddick was driving on a highway and was involved in a collision. Beach, 208 N.C. at 135, 179 S.E. at 446. For some fifteen minutes after the collision, Riddick's car remained on the highway. Id. Patton, who was driving at a negligent rate of speed, was forced to go around Riddick's car to avoid hitting it. Id. Patton's car fatally struck Beach, who was standing on the shoulder on the opposite of the highway. Id. Beach's administrator claimed that Riddick's negligent act of leaving his vehicle on the highway proximately caused Beach's death. Id. at 135, 179 S.E. at 446-47. Our Supreme Court stated, to hold that the defendant owed a duty to the plaintiff
to foresee that a third person would operate a car in such a negligent manner as to be compelled to drive out on to the shoulder of the highway in order to avoid a collision with a car parked on the opposite side thereof, and thereby strike a person standing on the shoulder, would *196 not only "practically stretch foresight into omniscience," Gant v. Gant, 197 N.C. 164, 148 S.E. 34 (1929), but would, in effect, require the anticipation of "whatsoever shall come to pass." We apprehend that the legal principles by which individuals are held liable for their negligent acts impose no such far-seeing and all-inclusive duty.
Id. at 136, 179 S.E. at 447.
I think most are in agreement that DOT can reasonably foresee that a driver traveling on its roadways might speed. However, to say that DOT could reasonably foresee that two drivers would engage in a road race, one vehicle would collide with another vehicle at eighty-six miles per hour on a fifty-five-miles-per-hour roadway, the impact causing the second vehicle "to become airborne and flip several times before landing in the median area" would also "require the anticipation of whatsoever shall come to pass." Beach, 208 N.C. at 136, 179 S.E. at 447. To diminish Stasko's actions to mere speeding and label them reasonably foreseeable is unfounded.
*716 See Yancey v. Lea, 354 N.C. 48, 53-54, 550 S.E.2d 155, 158 (2001) (noting that gross negligence has been found where "defendant is driving at excessive speeds" or "defendant is engaged in a racing competition"). Affirming the Commission's decision will lead to an impracticable standard with far-reaching consequences.
Accordingly, I respectfully dissent from the majority's opinion. The decision of the Full Commission should be reversed, and this case should be remanded to the Full Commission with instruction to affirm the Deputy Commissioner's decision.

Mr. Marceau testified that the clearance time on this intersection would likely be two seconds.