IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA15-445

 Filed: 2 February 2016

North Carolina Industrial Commission, I.C. Nos. TA-22272 – 22275

DANIEL and LISA HOLT, Administrators of the ESTATE OF HUNTER DANIEL
HOLT; STEVEN GRIER PRICE, Individually; STEVEN GRIER PRICE,
Administrator of the ESTATE OF McALLISTER GRIER FURR PRICE; STEVEN
GRIER PRICE, Administrator of the ESTATE OF CYNTHIA JEAN FURR, Plaintiffs,

 v.

NORTH CAROLINA DEPARTMENT OF TRANSPORTATION, Defendant.

 Appeal by Defendant from opinion and award entered 29 December 2014 by

the North Carolina Industrial Commission. Heard in the Court of Appeals 21

September 2015.

 DeVore Acton & Stafford, PA, by Fred W. DeVore, III, F. William DeVore IV
 and Derek P. Adler; and Rawls Scheer Foster & Mingo PLLC, by Amanda A.
 Mingo, for Plaintiffs-Appellees.

 Attorney General Roy Cooper, by Special Deputy Attorney General Melody R.
 Hairston and Special Deputy Attorney General Amar Majmundar, for
 Defendant-Appellant.

 McGEE, Chief Judge.

 Cynthia Jean Furr (“Furr”) was driving her two-year-old daughter McAllister

Grier Furr Price (“McAllister”) in her automobile (“the Furr car”) in the early evening

of 4 April 2009. Furr was driving the approximately one-half mile from her home to

her church, where she was the musical director. As Furr attempted to make a left-
 HOLT V. N.C. DOT

 Opinion of the Court

hand turn from her street, Riverpointe Drive, onto Highway 49 in the direction of

downtown Charlotte, the Furr car was broadsided by a Mitsubishi (“the Stasko car”)

driven by twenty-year-old Tyler Stephen Stasko (“Stasko”). Eleven-year-old Rex

Evan Thomas (“Rex”) and thirteen-year-old Hunter Daniel Holt (“Hunter”) were

passengers in the Stasko car at the time of the collision. Furr, McAllister, and Hunter

died as a result of injuries sustained in the collision. This collision occurred in a four-

way intersection (“the intersection”) where Riverpointe Drive and Palisades Parkway

intersected with Highway 49.

 According to the findings of fact of the Full Commission of the North Carolina

Industrial Commission (“Industrial Commission”), before the collision, Stasko was

driving Rex and Hunter home from a day trip to Carowinds amusement park. The

Stasko car was heading in a westerly direction on Highway 49, away from Charlotte

and towards Lake Wylie and South Carolina. While Stasko was stopped for the traffic

signal at the intersection of Shopton Road, Rex and Hunter noticed two female friends

in an adjacent vehicle driven by Carlene Atkinson (“Atkinson”). The kids “began

gesturing and joking with each other.” “When the light at Shopton Road turned

green, Mr. Stasko and Ms. Atkinson sped off at a high rate of speed in the direction

of the Palisades/Riverpointe intersection.” Stasko and Atkinson were apparently

engaging in a race. The traffic signal at Shopton Road was the last traffic signal or

sign Stasko would encounter before the collision. There was no traffic signal or sign

 -2-
 HOLT V. N.C. DOT

 Opinion of the Court

regulating traffic on Highway 49 at the intersection. There was a stop sign on

Riverpointe Drive, requiring drivers to stop before entering or crossing Highway 49.

 After coming to the stop sign on Riverpointe Drive, Cynthia
 Furr crossed Hwy 49 in order to make a left turn and
 proceed east on Hwy 49. She slowed prior to concluding
 the left turn in order to allow eastbound traffic on Hwy 49
 to clear. At the Riverpointe Drive intersection, Mr.
 Stasko’s vehicle, which was traveling in the left through
 lane, collided with the left side of Ms. Furr’s vehicle at an
 estimated speed of 86 miles per hour.

Atkinson, who was “some distance behind” the Stasko car when it impacted the Furr

car, stopped briefly at the scene of the accident, and then “left the accident scene

without offering assistance or waiting for law enforcement personnel to arrive.”

 Beginning in 2000, the area around the intersection underwent significant

changes. Prior to 2000, Highway 49, in the vicinity of Riverpointe Drive, was a two-

lane highway with a speed limit of 45 miles per hour. Riverpointe Drive terminated

at its intersection with Highway 49, and there was no roadway continuing on the

opposite side of Highway 49 from Riverpointe Drive. By late 2005, Highway 49 had

been widened to a four-lane highway, and the speed limit had been increased to 55

miles per hour. Defendant North Carolina Department of Transportation (“DOT”)

was responsible for this project (“the DOT project”). In addition, a four-way

intersection had been created by the addition of Palisades Parkway across Highway

49 from the terminus of Riverpointe Drive. Palisades Parkway was constructed by

Crescent Resources, LLC (“Crescent”) as a means of connecting its new housing

 -3-
 HOLT V. N.C. DOT

 Opinion of the Court

development to Highway 49. Pursuant to an agreement with DOT, Crescent was

permitted to construct Palisades Parkway and add designated turn lanes on Highway

49, which included two dedicated turn lanes for the west-bound lanes and one

dedicated turn lane for the east-bound lanes. Subsequent to these projects, a person

making a left-hand turn from Riverpointe Drive onto Highway 49 East had to drive

over or by the following: one dedicated turn lane for west-bound traffic turning right

onto Riverpointe Drive; two west-bound lanes of traffic; two dedicated turn lanes for

west-bound traffic to turn left onto Palisades Parkway; one dedicated lane for east-

bound traffic to turn left onto Riverpointe Drive; and two east-bound lanes of traffic.

There was also a dedicated turn lane for east-bound traffic to turn right onto

Palisades Parkway. In addition to being aware of east and west-bound traffic on

Highway 49, a driver would have to be aware of traffic from Palisades Parkway

attempting to either turn onto east or west-bound Highway 49, or attempting to cross

Highway 49 to access Riverpointe Drive.

 The plan for the intersection included installation of traffic signals, which were

to be funded by Crescent and installed by DOT. At the time of the 4 April 2009

collision no signals had been installed, even though one of DOT’s district engineers

had warned Crescent in 2006 that a signal was needed “at [that] time.”

 This action was brought in the Industrial Commission pursuant to the Tort

Claims Act by Steven Grier Price, as the administrator of the estates of Furr and

 -4-
 HOLT V. N.C. DOT

 Opinion of the Court

McAllister; and Daniel and Lisa Holt, as the administrators of Hunter’s estate

(together, “Plaintiffs”). Plaintiffs alleged that DOT negligently failed to install traffic

signals at the intersection, and that this negligence was a proximate cause of the

collision that killed Furr, McAllister, and Hunter.

 The following relevant stipulations were entered by Plaintiffs and DOT:

 3. This case arises out of a fatal automobile crash on 4 April
 2009, at the intersection of Highway 49 and Riverpointe
 Drive. A car driven by Tyler Stasko collided with a vehicle
 driven by Cynthia Jean Furr. Highway 49 is a state
 maintained highway. Prior to the accident, Highway 49
 had been widened and a fourth leg (Palisades Parkway)
 had been added to the intersection. The claimants contend
 that a proximate cause of the accident was the failure of
 [DOT] to install a traffic signal at the intersection. [DOT]
 stipulates that it had a duty to install a signal and that it
 breached that duty; however, [DOT] contends that said
 breach was not a proximate cause of the collision. Rather,
 [DOT] contends that the acts of others, including the
 intervening and superseding criminal acts of Mr. Stasko
 and Ms. Atkinson, were the proximate cause of the
 collision. Cynthia Jean Furr and her daughter, McAllister
 Grier Furr Price, were killed in the car driven by Ms. Furr.
 Hunter Daniel Holt was killed as a passenger in the vehicle
 driven by Tyler Stasko.

 4. At all times relevant to this action, Highway 49 was a
 road constructed and maintained by [DOT].

 5. Originally, Highway 49 was a two lane road, but
 beginning in the early 2000’s, [DOT] undertook a
 construction project to widen and improve Highway 49.

 6. During the project, Crescent Resources sought to
 construct a road opposite Riverpointe Drive, called
 Palisades Parkway. This road was intended to service a

 -5-
 HOLT V. N.C. DOT

 Opinion of the Court

 new subdivision known as The Palisades.

 7. As a part of a conditional zoning agreement with the
 Mecklenburg County Planning Commission, Crescent
 agreed to fund a traffic signal at the Highway 49/Palisades
 Parkway/Riverpointe Drive intersection. Although
 Palisades Parkway was connected to Highway 49 prior to
 the subject accident, Crescent did not pay those funds at
 any time prior to the crash in 2009.

 8. A traffic signal was not installed prior to the crash of 4
 April 2009.

 Because of DOT’s stipulation that it had a duty to install a traffic signal at the

intersection, and that it breached that duty, the sole issue before the Industrial

Commission was whether DOT’s breach of its duty was a proximate cause of the

collision and resulting deaths. A deputy commissioner entered a decision and order

on 14 February 2014. Because the deputy commissioner found that DOT could not

have foreseen Stasko’s criminal acts, the deputy commissioner concluded that the

failure to erect a traffic signal was not a proximate cause of the deaths. Plaintiffs

appealed to the Full Commission.

 The Full Commission reversed the decision of the deputy commissioner,

concluding:

 [DOT’s] breach of its duty to install a traffic signal at the
 . . . intersection was a proximate cause of the accident that
 resulted in the deaths of Cynthia Furr, McAllister Furr
 Price and Hunter Holt. The Commission concludes that
 the intervening negligence of Mr. Stasko and Ms. Atkinson
 was also a proximate cause of the accident, but not the sole
 proximate cause. As such, [DOT] is not insulated from

 -6-
 HOLT V. N.C. DOT

 Opinion of the Court

 liability for its negligence.

In support of this conclusion, the Full Commission found the following relevant facts:

 5. The compass orientation of curving Hwy 49 is such that
 the road travels east to west, with the easterly direction
 headed toward Charlotte and the westerly direction
 headed towards the Buster Boyd Bridge and South
 Carolina. There is a hill to the left of the intersection of
 Hwy 49 and Riverpointe Drive that limits visibility of the
 intersection and drivers on Hwy 49.

 6. The subject intersection was significantly altered during
 [DOT’s] widening project and the construction by Crescent.
 Some of the modifications included a right hand turn lane
 onto Riverpointe Drive, dual left turn lanes on Hwy 49 onto
 Palisades Parkway, dual left turning lanes on Palisades
 Parkway onto Hwy 49 in the direction of South Carolina,
 and removal of the grass median between the east and west
 travel lanes in the eastern leg of the intersection towards
 Charlotte.

 7. On 10 January 2006, [DOT’s] District Engineer, Louis L.
 Mitchell, wrote to Kublins Transportation Group, a
 consultant for Crescent, and advised that the traffic signal
 needed to be installed “at this time.” Although Crescent
 completed and [DOT] approved the intersection, Crescent
 did not fund and [DOT] did not install a traffic signal at
 that time. [DOT] did not install a traffic signal prior to 4
 April 2009.

 ....

 10. Detective Jesse D. Wood of the Charlotte-Mecklenburg
 Police Department was the lead investigator into this
 crash. Det. Wood testified, and the Commission finds, that
 prior to stopping at the Shopton Road intersection, Mr.
 Stasko had encountered several other traffic signals and
 had obeyed each. The Commission further finds that the
 greater weight of the evidence shows that Mr. Stasko and

 -7-
 HOLT V. N.C. DOT

 Opinion of the Court

Ms. Atkinson had not been racing prior to leaving the
Shopton Road intersection.

....

16. Daren Marceau is an expert in civil engineering, traffic
crash investigation, traffic crash reconstruction, and
human factors. Mr. Marceau explained that there are
national standards of American Association of State
Highway and Transportation Officials (“AASHTO”)
regarding sight distances at intersections. Mr. Marceau
testified, and the Commission finds, that even before the
addition of Palisades Parkway, the sight distance to the
east on Hwy 49 from Riverpointe Drive, and the sight
distance of the intersection for vehicles traveling west on
Hwy 49 was inadequate due to a vertical curve, a hill, in
the highway just before the Riverpointe intersection.

....

18. Mr. Marceau, Mr. Flanagan [DOT’s expert] and Det.
Wood all testified that if a traffic signal had been installed,
the signal and presence of the intersection would have been
visible to drivers traveling west for approximately one-half
mile on Hwy 49. With the traffic signal visible for one-half
mile to a driver traveling west on Hwy 49 at 86 mph, the
presence of the intersection and the right of way direction
from the signal would have been evident for approximately
twenty-one (21) seconds. Without the signal, the
intersection became visible at 650 feet and it would take
the same driver only approximately five (5) seconds to
cover that distance.

19. On 4 April 2009, there were no warning signs or other
devices on Hwy 49 to warn drivers of the approaching
Riverpointe intersection.

20. Plaintiff’s expert, Mr. Marceau, reviewed nine similar
accidents at the Riverpointe intersection which had
occurred following the start of [DOT’s] widening project

 -8-
 HOLT V. N.C. DOT

 Opinion of the Court

 and prior to the fatal crash on 4 April 2009. Mr. Marceau
 testified that in his expert opinion, and the Commission
 finds, that had the Riverpointe intersection been properly
 signalized, the crash on 4 April 2009 would not have
 occurred. Mr. Marceau based his opinion on the lack of
 visibility of the Riverpointe intersection and the driving
 behavior of Mr. Stasko prior to the crash. Mr. Marceau
 noted that both Mr. Stasko and Ms. Atkinson had stopped
 at traffic signals prior to the Riverpointe intersection and
 that there was no history of either of them running
 stoplights. Mr. Marceau testified, “I never had a doubt
 that they would’ve stopped at this traffic signal.”1

 21. [DOT’s] expert, Mr. Flanagan, did not have an opinion
 as to whether the Riverpointe intersection was dangerous
 or whether the lack of a signal contributed to the crash.

 ....

 24. Given [DOT’s] stipulation that a signal was needed, the
 lack of sight distance to and from the intersection, the
 speed limit of the roadway, the size of the intersection, and
 the number of previous similar accidents at this
 intersection, the Commission finds that the accident that
 resulted in the deaths of Cynthia Furr, McAllister Furr
 Price and Hunter Holt was a foreseeable consequence of
 [DOT’s] stipulated breach of duty in failing to install a
 traffic signal at that intersection.

 The Full Commission ruled that DOT’s failure to install traffic signals at the

intersection, which DOT stipulated constituted a breach of its duty to the public, was

 1 DOT contests this portion of finding of fact 20. However, this sentence merely states what
Mr. Marceau’s testimony was. The Full Commission did not find as fact that Stasko or Atkinson would,
without a doubt, have stopped at the traffic signal had one been present. We assume, however, that
Mr. Marceau’s testimony informed the Full Commission’s proximate cause findings.

 -9-
 HOLT V. N.C. DOT

 Opinion of the Court

a proximate cause of the accident and resulting deaths. The Full Commission

awarded the estates of the deceased $1,000,000.00 for each decedent. DOT appeals.

 I.

 DOT’s sole argument on appeal is that the “Industrial Commission erred when

it failed to determine that the criminal acts of third-parties were the sole proximate

cause of the collision.” We disagree.

 It is well established that

 [t]he standard of review for an appeal from the Full
 Commission’s decision under the Tort Claims Act “shall be
 for errors of law only under the same terms and conditions
 as govern appeals in ordinary civil actions, and the findings
 of fact of the Commission shall be conclusive if there is any
 competent evidence to support them.” As long as there is
 competent evidence in support of the Commission’s
 decision, it does not matter that there is evidence
 supporting a contrary finding. “The court’s duty goes no
 further than to determine whether the record contains any
 evidence tending to support the finding.” Thus, “when
 considering an appeal from the Commission, our Court is
 limited to two questions: (1) whether competent evidence
 exists to support the Commission’s findings of fact, and (2)
 whether the Commission’s findings of fact justify its
 conclusions of law and decision.”

Simmons v. Columbus Cty. Bd. of Educ., 171 N.C. App. 725, 727-28, 615 S.E.2d 69,

72 (2005) (citations omitted). “‘[T]he [Industrial] Commission is the sole judge of the

credibility of the witnesses and the [evidentiary] weight to be given their testimony,’

findings of fact by the Commission may be set aside on appeal when there is a

complete lack of competent evidence to support them[.]” Young v. Hickory Bus.

 - 10 -
 HOLT V. N.C. DOT

 Opinion of the Court

Furniture, 353 N.C. 227, 230, 538 S.E.2d 912, 914 (2000) (citations and quotation

marks omitted). Although DOT contests certain findings of fact, because we find

competent record evidence supporting the relevant findings of fact recited above, they

are binding on appeal. Id. We discuss the Full Commission’s finding that the

accident was “a foreseeable consequence of [DOT’s] stipulated breach of duty in

failing to install a traffic signal at that intersection” in greater detail below. See

Gaines v. Cumberland Cnty. Hosp. Sys., Inc., 203 N.C. App. 213, 219, 692 S.E.2d 119,

122 (2010) (“‘[p]roximate cause is ordinarily a question of fact’”) (citation omitted).

 The dissenting opinion contends that we should reverse the Full Commission's

decision and order for two distinct reasons: (1) because "DOT's breach of duty was not

an actual cause of [P]laintiffs’ injuries[,]" and (2) assuming arguendo DOT’s breach

of duty was an actual cause of the accident, the intentional criminal acts of Stasko

and Atkinson were unforeseeable and therefore constituted “an independent,

intervening cause absolving DOT of liability.” However, only the proximate cause

argument, and not any actual cause argument, was raised by DOT at trial, and now

on appeal. DOT stipulated that “it had a duty to install a signal and that it breached

that duty; [DOT] contend[ed at the hearing] that said breach was not a proximate

cause of the collision.” However, there is no mention of “actual cause” in the

stipulations. Further, the Full Commission’s decision and order identifies the only

issue to be decided by the Full Commission, other than damages, as “[w]hether the

 - 11 -
 HOLT V. N.C. DOT

 Opinion of the Court

death[s] of [Furr, McAllister, and Hunter were] proximately caused by the failure of

[DOT] to install a traffic signal at the intersection of Pallisades Parkway and

Highway 49[.]” This Court cannot, in this situation, base our opinion on arguments

not first made before, and passed on by, the Industrial Commission.

 Rule 10(a)(1) of the North Carolina Rules of Appellate
 Procedure states that in order “to preserve an issue for
 appellate review, a party must have presented to the trial
 court a timely request, objection, or motion, stating the
 specific grounds for the ruling the party desired the court
 to make” and must “obtain a ruling upon the party’s
 request, objection, or motion.” By failing to raise the issue
 of default at trial, respondent has failed to preserve it for
 appellate review.

In re Foreclosure of a Deed of Trust Executed By Rawls, __ N.C. App. __, __, 777 S.E.2d

796, 801 (2015) (citation omitted).

 In addition, the sole issue DOT brought forth on appeal was the following: “The

Industrial Commission erred when it failed to determine that the criminal acts of

third-parties were the sole proximate cause of the collision.” This is the sole issue we

are authorized to answer. N.C.R. App. P. 28(b)(6) (“Issues not presented in a party’s

brief, or in support of which no reason or argument is stated, will be taken as

abandoned.”). Because DOT did not make a cause-in-fact, or “actual cause” argument

on appeal, it is not properly before us. Id.; State v. Dinan, __ N.C. App. __, __, 757

S.E.2d 481, 485, disc. review denied, 367 N.C. 522, 762 S.E.2d 203 (2014). It is not

the job of this Court to make DOT’s argument for it. Id.

 - 12 -
 HOLT V. N.C. DOT

 Opinion of the Court

 II.

 DOT argues it was unforeseeable that Stasko and Atkinson would engage in a

“drag race” “committed in complete disregard of the law.” DOT argues: “Our State’s

jurisprudence has affirmed, and reaffirmed, the concept that ‘the intervening or

superseding criminal acts of another preclude liability of the initial negligent actor

when the injury is caused by the criminal acts.’ Tise v. Yates Construction Co., 345

N.C. 456, 460, 480 S.E.2d 677, 680 (1997).” DOT’s selective quoting from Tise would

seem to indicate that the “concept” discussed in Tise represents a per se rule. This is

not the case, as the full quotation in Tise makes clear:

 The general rule is that the intervening or superseding
 criminal acts of another preclude liability of the initial
 negligent actor when the injury is caused by the criminal
 acts. As our Court of Appeals noted . . .,

 [t]he doctrine of superseding, or intervening,
 negligence is well established in our law. In order
 for an intervening cause to relieve the original
 wrongdoer of liability, the intervening cause must be
 a new cause, which intervenes between the original
 negligent act and the injury ultimately suffered, and
 which breaks the chain of causation set in motion by
 the original wrongdoer and becomes itself solely
 responsible for the injury.

Id. at 460-61, 480 S.E.2d at 680 (emphasis added) (citations omitted). “The test by

which the negligent conduct of one is to be insulated as a matter of law by the

independent negligent act of another[ ] is reasonable unforeseeability on the part of

the original actor of the subsequent intervening act and resultant injury.” Id. at 461,

 - 13 -
 HOLT V. N.C. DOT

 Opinion of the Court

480 S.E.2d at 680-81 (emphasis added) (citations and quotation marks omitted). This

is true whether or not the alleged superseding act is criminal in nature. See Id.

 Regarding superseding proximate causes, our Supreme Court has held:

 It is immaterial how many new events or forces have been
 introduced if the original cause remains operative and in
 force. In order for the conduct of the intervening agent to
 break the sequence of events and stay the operative force
 of the negligence of the original wrongdoer, the intervening
 conduct must be of such nature and kind that the original
 wrongdoer had no reasonable ground to anticipate it.

 ....

 [T]he principle is stated this way: “In order to be effective
 as a cause superseding prior negligence, the new,
 independent, intervening cause must be one not produced
 by the wrongful act or omission, but independent of it, and
 adequate to bring about the injurious result; a cause which
 interrupts the natural sequence of events, turns aside their
 course, prevents the natural and probable result of the
 original act or omission, and produces a different result,
 that reasonably might not have been anticipated.”

 ‘‘If the intervening cause is in reality only a condition on or
 through which the negligence of the defendant operates to
 produce an injurious result, it does not break the line of
 causation so as to relieve the original wrongdoer from
 responsibility for the injury. A superseding cause cannot
 be predicated on acts which do not affect the final result of
 negligence otherwise than to divert the effect of the
 negligence temporarily, or of circumstances which merely
 accelerate such result.

 ‘‘‘The inquiry must, therefore, always be whether there was
 any intermediate cause disconnected from the primary
 fault, and self-operating, which produced the injury.’’’

 - 14 -
 HOLT V. N.C. DOT

 Opinion of the Court

 Ordinarily, “the connection is not actually broken if the
 intervening event is one which might in the natural and
 ordinary course of things, be anticipated as not entirely
 improbable, and the defendant’s negligence is an essential
 link in the chain of causation.”

 The test of foreseeability as an element of proximate cause
 does not require that the tortfeasor should have been able
 to foresee the injury in the precise form in which it
 occurred. “All that the plaintiff is required to prove on the
 question of foreseeability, in determining proximate cause,
 is that in ‘the exercise of reasonable care, the defendant
 might have foreseen that some injury would result from his
 act or omission, or that consequences of a generally
 injurious nature might have been expected.’’’

Riddle v. Artis, 243 N.C. 668, 671-72, 91 S.E.2d 894, 896-97 (1956) (citations omitted).

 We agree with the Full Commission that the acts of Stasko and Atkinson

combined with DOT’s breach of duty to cause the collision and resulting deaths. We

further hold that it was reasonably foreseeable that a vehicle speeding toward the

intersection, unregulated by any traffic signal, could lead to the type of accident and

injury involved in this case.

 In opposition to this holding, DOT argues :

 Traffic signals are not intended as a mechanism to keep
 individuals from engaging in criminal acts. While it may
 be foreseeable to Defendant that an individual may exceed
 the posted speed limit by 5 or even 10 miles per hour, it is
 impossible for Defendant to design a roadway upon which
 drivers may safely race one another at almost 90 miles per
 hour. Traffic laws and traffic control devices are only
 effective when individuals obey them.

 - 15 -
 HOLT V. N.C. DOT

 Opinion of the Court

 DOT’s focus on the criminal nature of Stasko’s actions is misplaced. All that

is required is that DOT “might have foreseen that some injury would result from [its]

act or omission, or that consequences of a generally injurious nature might have been

expected.” Riddle, 243 N.C. at 672, 91 S.E.2d at 897 (citation and quotation marks

omitted). Clearly, it was foreseeable that the failure to install traffic lights at a

dangerous and complicated intersection could result in “some injury” or

“consequences of a generally injurious nature.” Id. The Full Commission found as

fact that “the sight distance to the east on Hwy 49 from Riverpointe Drive, and the

sight distance of the intersection for vehicles travelling west on Hwy 49 was

inadequate due to a vertical curve, a hill, in the highway just before the Riverpointe

intersection.” The Full Commission also found that the expanded size of the

intersection, including the multiple travel and turning lanes, made the intersection

more dangerous than it had been prior to the DOT project. The Full Commission

further found:

 With the traffic signal visible for one-half mile to a driver
 traveling west on Hwy 49 at 86 mph, the presence of the
 intersection and the right of way direction from the signal
 would have been evident for approximately twenty-one (21)
 seconds. Without the signal, the intersection became
 visible at 650 feet and it would take the same driver only
 approximately five (5) seconds to cover that distance. R210

 One of the more foreseeable scenarios at the intersection would include a

vehicle cresting the hill in the westbound lane at a high rate of speed and impacting

 - 16 -
 HOLT V. N.C. DOT

 Opinion of the Court

another vehicle attempting to cross over the westbound lanes of Highway 49. The

fact that Stasko was speeding, and thus breaking the law, did not render his actions

unforeseeable. Id. at 669, 672, 91 S.E.2d at 895-97 (the defendant’s actions could be

found to be a proximate cause of an accident even though concurrent tortfeasor was

operating his vehicle “at a high and unlawful rate of speed”). Speeding is likely the

most prevalent infraction committed upon our highway system. Though the State

refers repeatedly to Stasko’s actions as “drag racing,” Stasko’s reason for speeding is

immaterial. “The test of foreseeability as an element of proximate cause does not

require that the tortfeasor should have been able to foresee the injury in the precise

form in which it occurred.” Riddle, 243 N.C. at 672, 91 S.E.2d at 897. Nor do we find

Stasko’s very high rate of speed to have rendered the accident unforeseeable as a

matter of law.

 The Industrial Commission was the trier of fact. “What is the proximate or a

proximate cause of an injury is ordinarily a question for [the trier of fact]. It is to be

determined as a fact from the attendant circumstances. Conflicting inferences of

causation arising from the evidence carry the case to the [trier of fact].” Short v.

Chapman, 261 N.C. 674, 680, 136 S.E.2d 40, 45 (1964) (citation omitted). Contrary

to the implication in DOT’s argument, proximate cause need not be proven to an

absolute certainty. Id. at 682, 136 S.E.2d at 47 (“absolute certainty . . . that [the

injury] proximately resulted from the wrongful act need not be shown to support an

 - 17 -
 HOLT V. N.C. DOT

 Opinion of the Court

instruction thereon”) (citation omitted); Id. at 681, 136 S.E.2d at 46 (“if more than

one legitimate inference can be drawn from the evidence, the question of proximate

cause is to be determined by the [trier of fact]”) (citation omitted). As this Court has

stated:

 Proximate cause is a cause which in natural and
 continuous sequence, unbroken by any new and
 independent cause, produced the plaintiff’s injuries,
 and without which the injuries would not have
 occurred, and one from which a person of ordinary
 prudence could have reasonably foreseen that such a
 result, or consequences of a generally injurious nature,
 was probable under all the facts as they existed.

 “[I]t is only in exceptional cases, in which reasonable minds
 cannot differ as to foreseeability of injury, that a court
 should decide proximate cause as a matter of law.
 Proximate cause is ordinarily a question of fact for the jury,
 to be solved by the exercise of good common sense in the
 consideration of the evidence of each particular case.”

Gaines, 203 N.C. App. at 219, 692 S.E.2d at 122 (emphasis added) (citations omitted).

 In the present case it is, of course, conceivable that the accident would have

occurred even had there been properly functioning traffic signals in the intersection.

It is conceivable that Stasko would have failed to see the light, or that he would have

ignored a red light at the peril of his life. It is also conceivable, and much more likely,

that Stasko would have seen a red light and stopped or slowed, avoiding the accident.

As DOT itself argues, “had [Stasko] simply reduced his speed, . . . Furr would have

had additional time to move out of the path of [Stasko’s] vehicle.” Had there been a

 - 18 -
 HOLT V. N.C. DOT

 Opinion of the Court

properly functioning traffic signal, Stasko would have had approximately sixteen

additional seconds to notice the intersection and initiate deceleration. It was the

province of the Full Commission, as trier of fact, to make a determination based on

the facts, law, and common sense, concerning whether Stasko’s high-speed racing

behavior indicated that he would have completely ignored a properly functioning

traffic signal. Id. The Full Commission found that it did not.

 Further, had the signal been red for traffic on Highway 49, Furr would not

have needed to stop in the intersection to wait for eastbound Highway 49 traffic to

clear. Had the signal been green for Highway 49 traffic, Furr would have been safely

stopped on Riverpointe Drive awaiting the signal change. We find the Full

Commission’s finding that DOT’s breach of duty was a proximate cause of the

accident to be supported by the evidence, and to have been “the exercise of good

common sense in the consideration of the evidence [in this] case.” Id. (citation

omitted).

 The dissenting opinion states that “[t]he determinative factor is not whether

Stasko would have obeyed or ignored the traffic signal but whether the lack of a traffic

signal was the proximate cause of the collision.” It is true that the relevant issue is

whether “the lack of a traffic signal was [a] proximate cause of the collision.”

However, as the existence of proximate cause is, in this case, a question of fact, it is

appropriately “an inference of fact to be drawn from other facts and circumstances.”

 - 19 -
 HOLT V. N.C. DOT

 Opinion of the Court

Hairston v. Alexander Tank & Equip. Co., 310 N.C. 227, 234, 311 S.E.2d 559, 566

(1984). There is a difference between inference and mere speculation or conjecture,

and Mr. Marceau was qualified to give his opinion that, based on the facts and

circumstances before him, the accident would not have occurred absent DOT’s breach

of its duty.

 DOT argues that the “Industrial Commission has essentially concluded that

[DOT] is, and shall be, strictly liable for virtually any accident that occurs on State

roadways.” Our decision in no manner leads to that result. It is not only foreseeable,

but inevitable, that vehicles will speed on the roadways managed and maintained by

DOT. We cannot agree with the deputy commissioner and the dissenting opinion that

it is only foreseeable that motorists will speed five to ten miles per hour over the

posted limit, when it is common knowledge that violations for speeds at or exceeding

Stasko’s in this instance are, sadly, too common. The dissenting opinion poses several

“what if” questions:

 Had there been a properly functioning traffic signal,
 neither this Court nor any expert in North Carolina can
 say that, based solely on that premise, Stasko would have
 had sixteen additional seconds to initiate deceleration.
 What if the traffic signal, conceivably visible one[-]half
 miles from the intersection, or for twenty-one seconds
 based on Stasko’s speed, was green? Would Stasko have
 initiated deceleration? What if Stasko was looking behind
 for Atkinson’s car and did not notice that there was a traffic
 signal ahead? What if the traffic signal turned yellow at
 the moment Stasko was cresting the hill, around 650 feet
 from the intersection? What if Stasko did not decelerate

 - 20 -
 HOLT V. N.C. DOT

 Opinion of the Court

 for the yellow light and consequently drove through a
 “fresh” red light, and Furr immediately went through the
 green light on Riverpointe Drive, and their cars collided in
 the intersection? Would DOT be liable based on the incline
 of the hill, lack of sight distance, or roadway design?

 As an initial matter, because there was competent evidence in support of both

the finding that the traffic signal would have been visible for approximately one-half

mile on Stasko’s approach, and the finding that the signal would, based on Stasko’s

speed, have alerted Stasko to the presence of the intersection approximately twenty-

one seconds before he would have entered the intersection, we must operate based

upon the assumption that these facts are true. Simmons, 171 N.C. App. at 727-28,

615 S.E.2d at 72. It is not only a red traffic signal that alerts a driver to the presence

of an upcoming intersection, and thus warns that driver of potential traffic entering

the intersection, but also the mere presence of the signal which alerts drivers to the

fact of the approaching intersection. It is a reasonable inference that a driver will

prepare for the potential need to stop even when approaching a green signal, as a

green signal will always turn from green to yellow to red and back again. A green

signal that is a half-mile distant has a very reasonable chance of changing to red

before a driver reaches the intersection it governs, even when that driver is driving

at a very high rate of speed. It is highly unlikely that Stasko would have been looking

behind him, in search of Atkinson or for any other reason, for twenty-one seconds. It

is also highly unlikely Stasko would have taken his eyes off the road in front of him

 - 21 -
 HOLT V. N.C. DOT

 Opinion of the Court

for sixteen or even five seconds.2 And, as stated above, had a properly functioning

signal been green for Stasko, it would have been red for Furr, and she would not have

entered the intersection. It is of course possible that Stasko would have still collided

with Furr even had there been a properly functioning traffic signal. However,

Plaintiffs’ burden is not so high as to require they prove to an absolute certainty that

the accident would not have occurred absent DOT’s breach of its duty. As correctly

noted by the dissenting opinion, “Proximate cause is an inference of fact to be drawn

from other facts and circumstances.” Hairston, 310 N.C. at234, 311 S.E.2d at 566.

Though it is possible that acts accompanying Stasko’s “racing” behavior, other than

speeding, played a role in the accident, we cannot say that this potentiality breaks

the chain of proximate cause as a matter of law. The Full Commission considered all

the facts surrounding Stasko’s racing behavior, but still inferred proximate cause

from the totality of the facts and circumstances before it. This was the Full

Commission’s province as the trier of fact, not ours.

 Not every intersection requires traffic signals. It is the duty of DOT to take

reasonable care in identifying those intersections that do require traffic signals, for

 2 The Full Commission found as fact: “With the traffic signal visible for one-half mile to a driver
traveling west on Hwy 49 at 86 mph, the presence of the intersection and the right of way direction
from the signal would have been evident for approximately twenty-one (21) seconds. Without the
signal, the intersection became visible at 650 feet and it would take the same driver only
approximately five (5) seconds to cover that distance.” The addition of a traffic signal would have
provided Stasko an additional sixteen seconds in which to become aware of the approaching
intersection.

 - 22 -
 HOLT V. N.C. DOT

 Opinion of the Court

both the efficient regulation of traffic and the safety of motorists and pedestrians. If

an accident occurs at an intersection not requiring a traffic signal, DOT will not be

held liable for failing to erect a traffic signal, even where a signal would have

prevented the accident. That is because DOT cannot be held liable where it has

breached no duty. Where DOT has installed and maintained properly functioning

traffic signals, it will not be found liable when accidents like the one before us occur;

again, because it will have breached no duty with regard to the traffic signal. In

answer to the dissenting opinion’s query on this matter, DOT could be held liable for

an accident caused by “a driver who is texting and approaching an unregulated

intersection” if DOT had a duty to install a traffic signal at that intersection, DOT

breached that duty, and the breach of that duty was found by the trier of fact to be a

proximate cause of the accident. This is true even if the driver’s texting was a

concurrent proximate cause. DOT could not be held liable if the trier of fact rationally

determined that the lack of a traffic signal was not a proximate cause of the accident,

or that the texting activity in that situation was such as to break the causal link and

was therefore the sole proximate cause of the resulting accident. When there is a

conflict in the evidence, or evidence may reasonably be interpreted in differing ways,

it is generally the province of the trier of fact to make the proximate cause

determination, and that is what has happened in this case. The dissenting opinion

places its focus on what it determines was the unforeseeability of Stasko’s egregious

 - 23 -
 HOLT V. N.C. DOT

 Opinion of the Court

conduct. However, in this case, the relevant issue was whether it was foreseeable

that absent a functioning traffic signal, a speeding motorist would crest the hill

approaching the intersection and collide with another motorist entering the

intersection from another direction.

 DOT and the dissenting opinion rely on Tise. We simply note that in Tise our

Supreme Court held:

 In the instant case, the police officers responding to the
 initial call to the construction site investigated and acted
 to prevent the criminal acts of unknown third parties.
 While the officers were called to the site to investigate
 possible tampering with the grader equipment, Tise’s
 injuries caused by the criminal acts of third parties in their
 unauthorized operation of the grader could not have been
 foreseeable from the officers’ acts of attempting to disable
 the grader. The criminal acts in this case were an
 intervening cause that relieved the City of any actionable
 negligence by cutting off the proximate cause flowing from
 the acts of the agents of the City in attempting to disable
 the grader. This superseding cause was a new cause, which
 intervened between the original negligent act of the City
 and the injury ultimately suffered by Tise. The third party
 criminal acts in this case broke the chain of causation set
 in motion by the police officers.

Tise, 345 N.C. at 461-62, 480 S.E.2d at 681. Our Supreme Court reached this holding

by reasoning that even if the police were negligent in failing to properly secure a

construction site subsequent to having received a call pertaining to alleged tampering

with construction equipment, the result of that negligence, an officer who

subsequently returned to the scene and was crushed to death by stolen construction

 - 24 -
 HOLT V. N.C. DOT

 Opinion of the Court

equipment as he sat in his cruiser on a nearby street, was not foreseeable. These

facts are in stark contrast to a situation where a speeding automobile enters an

intersection and collides with another automobile. The first fact pattern borders on

the bizarre; the second is all too common.

 Further, not all accidents occurring at intersections where DOT has breached

its duty to install traffic signals will lead to DOT liability, because proximate cause

must first be proved. If a properly functioning traffic signal simply could not have

prevented an accident, the lack of a traffic signal cannot be a proximate cause of that

accident as a matter of law.3 If there is some question concerning whether a properly

functioning traffic signal could have prevented an accident in an intersection in which

DOT breached its duty to install same, the issue of proximate cause is one of fact to

be determined by the trier of fact. If, for example, Stasko had been ignoring red

lights prior to the collision in the intersection, it is quite possible the Full

Commission, and this Court, would have reached a different decision. However, those

are not the facts before us. Our holding stands for the unremarkable proposition that

DOT is liable for its breaches of duty when those breaches result in the kind of injury

the intended prevention of which created the duty in the first place.

 3 For example, proximate cause in the present case could not be proven based upon the lack of
a traffic signal if the accident resulted from Stasko suffering a medical emergency and losing
consciousness instead of Stasko speeding. This hypothetical presumes the medical emergency
occurred at a time before a properly functioning traffic signal would have had an opportunity to
regulate Stasko’s driving.

 - 25 -
 HOLT V. N.C. DOT

 Opinion of the Court

 The dissenting opinion contends that our holding “will lead to an impractical

standard with far-reaching consequences.” We disagree. We have simply applied

well-established standards to the facts before us. On the other hand, it is difficult to

imagine under what circumstances DOT could be held liable for breaching its duty to

install traffic signals in dangerous intersections were we to adopt the reasoning of

the dissenting opinion. This is so because it would rarely, if ever, be possible to prove

that the installation of a properly functioning traffic signal would have, without any

doubt, prevented an accident from occurring in any particular intersection. There

are infinite potential variables all acting together to produce any singular result.

Were the trier of fact required to rule out with absolute certainty the possibility that

any of these potential variables were the actual sole proximate cause of an accident,

it is difficult to see how a plaintiff could ever sufficiently prove the proximate cause

necessary to make a case for negligence. However, under our law, plaintiffs are not

saddled with this impossible burden. Because we find there was competent evidence

supporting the Full Commission’s findings of fact, and because these findings of fact

were sufficient to support its conclusions of law and decision, we must defer to the

Full Commission’s determinations of credibility and the weight to be given the

evidence. Young, 353 N.C. at 230, 538 S.E.2d at 914.

 AFFIRMED.

 Judge DAVIS concurs.

 - 26 -
 HOLT V. N.C. DOT

 Opinion of the Court

Judge ELMORE dissents with separate opinion.

 -2-
 No. COA15-445 – Holt v. NCDOT

 ELMORE, Judge, dissenting.

 I respectfully disagree with the majority’s conclusion that DOT’s breach of duty

was a proximate cause of the accident. Although the majority rejects DOT’s challenge

to certain findings of fact by summarily finding competent record evidence to support

them, I agree with DOT that competent evidence is lacking.

 I would reverse the Commission’s decision for two reasons: (1) DOT’s

breach of duty was not an actual cause of plaintiffs’ injuries; and (2) even if actual

cause was established, I would find that the intentional criminal acts of Stasko and

Atkinson could not have been reasonably foreseen by DOT and, therefore, constitute

an independent, intervening cause absolving DOT of liability.

 Pursuant to N.C. Gen. Stat. § 143-293, a party may appeal from the decision

of the Commission to the Court of Appeals. “Such appeal shall be for errors of law

only under the same terms and conditions as govern appeals in ordinary civil actions,

and the findings of fact of the Commission shall be conclusive if there is any

competent evidence to support them.” N.C. Gen. Stat. § 143-293 (2013). “Competent

evidence is evidence ‘that a reasonable mind might accept as adequate to support the

finding.’ ” In re Adams, 204 N.C. App. 318, 321, 693 S.E.2d 705, 708 (2010) (quoting

Eley v. Mid/East Acceptance Corp. of N.C., 171 N.C. App. 368, 369, 614 S.E.2d 555,

558 (2005)). “We review the Full Commission’s conclusions of law de novo.” Holloway

v. N.C. Dep’t of Crime Control & Pub. Safety, 197 N.C. App. 165, 169, 676 S.E.2d 573,

576 (2009) (citations omitted).
 HOLT V. NCDOT

 ELMORE, J., dissenting

 To satisfy the causation element of a negligence claim, the claimant “must

prove that defendant’s action was both the cause-in-fact (actual cause) and the

proximate cause (legal cause)[.]” State v. Lane, 115 N.C. App. 25, 28, 444 S.E.2d 233,

235 (1994). “If a plaintiff is unable to show a cause-in-fact nexus between the

defendant’s conduct and any harm, our courts need not consider the separate

proximate cause issue of foreseeability.” Hawkins v. Emergency Med. Physicians, ___

N.C. App. ___, ___, 770 S.E.2d 159, 165 (Apr. 7, 2015) (No. COA14-877). “The

standard for factual causation . . . is familiarly referred to as the ‘but-for’ test, as well

as a sine qua non test. Both express the same concept: an act is a factual cause of an

outcome if, in the absence of the act, the outcome would not have occurred.”

Restatement (Third) of Torts: Phys. & Emot. Harm § 26 (2010).

 “Proximate cause is a cause which in natural and continuous sequence,

unbroken by any new and independent cause, produced the plaintiff’s injuries, and

without which the injuries would not have occurred[.]” Lord v. Beerman, 191 N.C.

App. 290, 294, 664 S.E.2d 331, 334 (2008) (quoting Hairston v. Alexander Tank &

Equip. Co., 310 N.C. 227, 233, 311 S.E.2d 559, 565 (1984)) (quotations omitted).

“[E]vidence is insufficient if it merely speculates that a causal connection is possible.”

Id. at 295, 664 S.E.2d at 335. “An inference of negligence cannot rest on conjecture

or surmise. . . . This is necessarily so because an inference is a permissible conclusion

drawn by reason from a premise established by proof.” Sowers v. Marley, 235 N.C.

 2
 HOLT V. NCDOT

 ELMORE, J., dissenting

607, 609, 70 S.E.2d 670, 672 (1952) (citations omitted). “Proximate cause is an

inference of fact to be drawn from other facts and circumstances.” Hairston, 310 N.C.

at 234, 311 S.E.2d at 566. “[T]he general rule of law is that if between the negligence

and the injury there is the intervening crime or wilful and malicious act of a third

person producing the injury but that such was not intended by the defendant, and

could not have been reasonably foreseen by it, the causal chain between the original

negligence and accident is broken.” Ward v. R.R., 206 N.C. 530, 532, 174 S.E. 443,

444 (1934) (citations and quotations omitted).

 The majority concludes that there is competent evidence to support finding of

fact number twenty, which states, “Mr. Marceau testified that in his expert opinion,

and the Commission finds, that had the Riverpointe intersection been properly

signalized, the crash on 4 April 2009 would not have occurred. Mr. Marceau based

his opinion on the lack of visibility of the Riverpoint intersection and the driving

behavior of Mr. Stasko prior to the crash.” (emphasis added.) I disagree. The

Commission’s finding, and this Court’s approval, that but for DOT’s failure to install

a traffic signal, this collision would not have occurred is speculative and is not

supported by any competent evidence. DOT’s omission was not the actual cause of

plaintiffs’ injuries.

 Here, Mr. Marceau, a forensic traffic engineer, testified “as an expert in the

area of civil engineering, traffic crash investigation, traffic crash reconstruction, and

 3
 HOLT V. NCDOT

 ELMORE, J., dissenting

human factors as it pertains to automobile accident investigation.” Yet he did not

base his testimony on scientific, technical, or other specialized knowledge that would

assist the trier of fact to understand the evidence. See N.C. Gen. Stat. § 8C-1, Rule

702 (2013). Moreover, his testimony was not based upon sufficient facts or data, and

it was not the product of reliable principles and methods that were reliably applied

to the facts of this case. See id. Instead, Mr. Marceau testified as follows:

 Q. [W]hat opinions and conclusions did you reach?

 A. My—my conclusions were that this traffic signal,
 it should’ve been here a long time before this crash ever
 happened, that—and further, had the traffic signal been in
 place before the crash, that the crash would have been
 prevented. Had the traffic signal been in place and been
 operating, Ms. Furr would’ve received a green light, and
 pulled forward on a green light, and Mr. Stasko would’ve
 stopped for a yellow or a red, and the crash wouldn’t have
 occurred.

 Q. How do you know that Mr. Stasko would’ve—
 what—what in your research—what in your investigation
 would lead you to the conclusion that Mr. Stasko would
 have stopped at that stoplight versus running through the
 stoplight at the speed he was going?

 A. Several things during my investigation. Mr.
 Stasko and—and Ms. Atkinson had both stopped at
 stoplights prior to this intersection. There was no history
 of them running stoplights. They’d been stopping at—at
 traffic signals, and I—I think I heard the detective testify
 this morning the kids in the car were horsing around, and
 goofing off, communicating junk with each other, and—and
 they were stopping at all the traffic signals. I—I—I
 didn’t—I never had a doubt that they would’ve stopped at
 this traffic signal.

 4
 HOLT V. NCDOT

 ELMORE, J., dissenting

 On cross-examination, regarding Mr. Marceau’s opinion above, counsel for

DOT asked, “But that’s not based on any scientific evaluation, is it?” Mr. Marceau

responded, “It’s based on what I’ve read from affidavit, and testimony, and from

hearing the officer testify.”

 In Young v. Hickory Business Furniture, our Supreme Court explained that

when “expert opinion testimony is based merely upon speculation and conjecture, it

can be of no more value than that of a layman’s opinion. . . . Indeed, this Court has

specifically held that ‘an expert is not competent to testify as to a causal relation

which rests upon mere speculation or possibility.’ ” 353 N.C. 227, 230, 538 S.E.2d

912, 915 (2000) (quoting Dean v. Coach Co., 287 N.C. 515, 522, 215 S.E.2d 89, 94

(1975)).

 Like the expert witness in Young, Mr. Marceau’s “responses were forthright

and candid, and demonstrated an opinion based solely on supposition and conjecture.”

Young, 353 N.C. at 233, 538 S.E.2d at 916–17. In Young, our Supreme Court held

that such evidence was incompetent and insufficient to support the Industrial

Commission’s findings of fact. Id. at 233, 538 S.E.2d at 917. Likewise, here the

evidence was incompetent to support the Commission’s finding that, had the

intersection been properly signalized, the crash would not have occurred.

 John Flanagan, who testified as an expert in accident reconstruction and

engineering, performed several calculations about the effect of different speeds

 5
 HOLT V. NCDOT

 ELMORE, J., dissenting

combined with perception/reaction time on the total stopping distance. In his opinion,

he stated that it would be possible for someone driving at a speed of eighty-six miles

per hour to stop his vehicle before entering the intersection, that he did not know why

Stasko did not stop, and that the onset of a driver’s perception/reaction time would

be delayed if he was not being attentive to what is going in front of him. Detective

Jesse Wood also prepared a collision reconstruction summary and testified to his

findings, which incorporated drag factor, deceleration rate, perception/reaction time,

and stopping distance. Detective Wood found “at 86 miles per hour, using a

deceleration rate of .71 that Stasko could have brought his vehicle to a stop in 536

feet[,]” which is short of the estimated sight distance of 586 to 650 feet from the crest

of the hill to the intersection. Mr. Marceau agreed that, based on Detective Wood’s

calculations, if the driver had a one-and-a-half second perception/reaction time,

mathematically, the driver could have stopped prior to the collision. Mr. Marceau

noted, though, that “in the real world situation where we have multiple things to pay

attention to,” the perception and reaction time may be longer, and one-and-a-half

seconds is not appropriate. He stated, “I think even my numbers show that if he had

acted faster than, I think I said 2.7 or 2.8 seconds, and he slammed on his brakes, he

could’ve avoided the crash, and he could’ve skidded through a stop, and brought his

car to a stop.” As the majority correctly points out, the Commission is the trier of fact

 6
 HOLT V. NCDOT

 ELMORE, J., dissenting

and may choose how much weight to place on testimony. Nevertheless, the evidence

must still be competent to support the Commission’s findings.

 Regarding proximate cause, the majority concludes that there is competent

evidence to support finding of fact number twenty-four, which states,

 24. Given defendant’s stipulation that a signal was
 needed, the lack of sight distance to and from the
 intersection, the speed limit of the roadway, the size of the
 intersection, and the number of previous similar accidents
 at this intersection, the Commission finds that the accident
 that resulted in the deaths of Cynthia Furr, McAllister
 Furr Price and Hunter Holt was a foreseeable consequence
 of defendant’s stipulated breach of duty in failing to install
 a traffic signal at that intersection.

 In attempting to show why the Commission’s decision is supported by

competent evidence, the majority states,

 Had there been a properly functioning traffic signal,
 Stasko would have had approximately sixteen additional
 seconds to notice the intersection and initiate deceleration.
 It was the province of the Commission, as trier of fact, to
 make a determination based on the facts, law, and common
 sense, concerning whether Stasko’s high-speed racing
 behavior indicated that he would have completely ignored
 a properly functioning traffic signal. . . .

 Further, had the signal been red for traffic on
 Highway 49, Furr would not have needed to stop in the
 intersection to wait for eastbound Highway 49 traffic to
 clear. Had the signal been green for Highway 49 traffic,
 Furr would have been safely stopped on Riverpointe Drive
 awaiting the signal change. We find the Commission’s
 finding that DOT’s breach of duty was a proximate cause
 of the accident to be supported by the evidence[.]

 7
 HOLT V. NCDOT

 ELMORE, J., dissenting

 The determinative factor is not whether Stasko would have obeyed or ignored

the traffic signal but whether the lack of a traffic signal was the proximate cause of

the collision. As the Deputy Commissioner found, whether “it is reasonable to assume

that [Stasko] would have slowed and prepared to stop because of the signal” is

“speculative and not germane to the issue of foreseeability.”

 Had there been a properly functioning traffic signal, neither this Court nor any

expert in North Carolina can say that, based solely on that premise, Stasko would

have had sixteen additional seconds to initiate deceleration. What if the traffic

signal, conceivably visible one-and-a-half miles from the intersection, or for twenty-

one seconds based on Stasko’s speed, was green? Would Stasko have initiated

deceleration? What if Stasko was looking behind for Atkinson’s car and did not notice

that there was a traffic signal ahead? What if the traffic signal turned yellow at the

moment Stasko was cresting the hill, around 650 feet from the intersection? What if

Stasko did not decelerate for the yellow light and consequently drove through a

“fresh” red light,4 and Furr immediately drove through the green light on Riverpointe

Drive, and their cars collided in the intersection? Would DOT be liable based on the

incline of the hill, lack of sight distance, or roadway design?

 Mr. Marceau testified, “When people run red lights, it happens—I’ve—I’ve

actually looked at thousands of—studied numbers on this. It happens in several

 4 Mr. Marceau testified that the clearance time on this intersection would likely be two
seconds.

 8
 HOLT V. NCDOT

 ELMORE, J., dissenting

different batches, but it’s typically portions of a second or a second after the light has

turned red.” He further stated, “They’re—they’re distracted, not paying attention,

whatever. It’s not—we just—we just—unless someone’s drunk, or high, or something

like that, you know, impaired, we just don’t have people just running through red

lights out in the middle of nowhere.” Significantly, the majority admits, “If a properly

functioning traffic signal simply could not have prevented an accident, the lack of a

traffic signal cannot be a proximate cause of that accident as a matter of law.” I

contend that is the precise scenario in front of us. No evidence shows that such

omission was a cause in fact of the injuries, much less a proximate cause. Gillespie

v. Coffey, 86 N.C. App. 97, 100, 356 S.E.2d 376, 378 (1987).

 The findings indicate that Stasko did not intentionally hit the Furr car and

that Stasko did not engage his brakes. The findings do not indicate that there was a

vehicle in the right-hand lane preventing Stasko from swerving right. The majority

can speculate that “it is, of course, conceivable that the accident would have occurred

even had there been properly functioning traffic signals in the intersection. It is

conceivable that Stasko would have failed to see the light, or that he would have

ignored a red light at the peril of his life. It is also conceivable, and much more likely,

that Stasko would have seen a red light and stopped or slowed, avoiding the accident.”

But that is all we can do—speculate. And that is all that the Commission did.

 I also disagree with the majority’s holding “that it was reasonably foreseeable

 9
 HOLT V. NCDOT

 ELMORE, J., dissenting

that a vehicle speeding toward the intersection, unregulated by any traffic signal,

could lead to the type of accident and injury involved in this case.” Although the

majority maintains that DOT’s focus on the criminal nature of Stasko’s actions is

misplaced and the reason for his speeding is immaterial, the entirety of Stasko and

Atkinson’s conduct must be analyzed in determining foreseeability. See Ramsbottom

v. R.R., 138 N.C. 39, 41, 50 S.E. 448, 449 (1905) (explaining that proximate cause is

established if “any man of ordinary prudence could have foreseen that such a result

was probable under all the facts as they existed”). The majority states, “The fact that

Stasko was speeding, and thus breaking the law, did not render his actions

unforeseeable.”

 Here, however, as the Deputy Commissioner concluded, “foreseeable acts of

speeding are those instances where a driver is travelling five to ten miles an hour

over the limit, as opposed to more than 30 miles over the posted speed.” As explained

below, Stasko was not merely speeding. Plaintiff’s expert, Mr. Marceau, testified to

the following:

 A. [Marceau] We—we know that the Atkinson
 vehicle was behind [Stasko] and to his right. We’re not
 exactly sure where it was.

 Q. And could that impact also his—his—the human
 factors part—his though[t] processes as to whether
 swerving is the right idea to do, or braking is the right idea,
 or a combination of the two is the right thing to do?

 A. [Marceau] Absolutely. He’s—he’s been jockeying

 10
 HOLT V. NCDOT

 ELMORE, J., dissenting

 positions with this other vehicle, changing lanes, forward,
 backward, around each other for the last one-point—well,
 1.5 miles from the traffic signal at Shopton. So he has a
 moving target around him, much like a pilot flying near
 another plane. You have to make sure where the other
 plane is before you change your course, or a (unintelligible),
 or anybody else in motion.

 Stasko was convicted of three counts of involuntary manslaughter, and

Atkinson pled guilty to three counts of involuntary manslaughter based on their

involvement. The facts establish that Stasko was not only speeding, but racing—

“jockeying positions” with a “moving target.” Although some speeding is foreseeable,

Stasko’s erratic and hazardous conduct was not reasonably foreseeable. I note that

the law “fix[es] [defendant] with notice of the exigencies of traffic, and he must take

into account the prevalence of that ‘occasional negligence which is one of the incidents

of human life.’ ” Hairston, 310 N.C. at 234, 311 S.E.2d at 565 (quoting Beanblossom

v. Thomas, 266 N.C. 181, 146 S.E.2d 36 (1966); citing Restatement (Second) of Torts

§ 447, comment c (1965)). However, the evidence shows that this was not a simple

case of occasional negligence. As the Deputy Commissioner concluded, “it is

unreasonable to impute upon [DOT] the duty to protect the general public from any

and all intentional criminal acts. It is not possible, nor is it feasible.”

 In Westbrook v. Cobb, the plaintiff argued that “it need not be shown that

defendant could foresee what would happen, nor is it relevant that the eventual

consequences . . . were improbable. Rather, all plaintiff needs to show is that

 11
 HOLT V. NCDOT

 ELMORE, J., dissenting

defendant set in motion a chain of circumstances that led ultimately to plaintiff’s

injury.” 105 N.C. App. 64, 68, 411 S.E.2d 651, 654 (1992). This Court stated that the

plaintiff’s injury must nonetheless be “the natural result of a continuous sequence of

actions set into motion by defendant’s initial act[.]” Id. at 69, 411 S.E.2d at 654. We

noted, “[P]roximate cause is to be determined on the facts of each case upon mixed

considerations of logic, common sense, justice, policy and precedent. [I]t is

inconceivable that any defendant should be held liable to infinity for all the

consequences which flow from his act, some boundary must be set.” Id. at 68–69, 411

S.E.2d at 654 (quoting Sutton v. Duke, 277 N.C. 94, 108, 176 S.E.2d 161, 169 (1970))

(quotations omitted).

 As discussed at the oral argument, if Stasko had been breaking other laws,

such as texting or driving while intoxicated, would plaintiffs still argue that the lack

of a traffic signal was the proximate cause of the collision? Conceivably, based on the

majority’s logic, a plaintiff may now argue that a driver who is texting and

approaching an unregulated intersection would have been able to avoid a collision if

a traffic signal was installed because the driver likely would have had increased sight

distance and would have stopped texting in time to stop at a red light. The majority’s

opinion leaves DOT susceptible to liability that it should not be forced to incur.

 As I conclude that there is no competent evidence to support the Commission’s

findings of fact on foreseeability and proximate cause, I similarly conclude that the

 12
 HOLT V. NCDOT

 ELMORE, J., dissenting

conclusions of law listed below are not supported by any other findings of fact.

 The Commission entered the following conclusions of law:

 2. The issue before the Commission is whether the
 intervening acts of negligence by Mr. Stasko and Ms.
 Atkinson are such that they relieve defendant of its
 liability for its negligence. When considering intervening
 acts of negligence, the North Carolina Court of Appeals
 explained, “[t]he first defendant is not relieved of liability
 unless the second independent act of negligence could not
 reasonably have been foreseen.” Hester v. Miller, 41 N.C.
 App. 509, 513, 255 S.E.2d 318, 321 (1979) (citation
 omitted). The court explained further, “[t]he foreseeability
 standard should not be strictly applied. It is not necessary
 that the whole sequence of events be foreseen, only that
 some injury would occur.” Id.

 ....

 4. The Commission concludes that the actions of Mr.
 Stasko and Ms. Atkinson were reasonably foreseeable by
 defendant. “Experience assures us that [people] do in fact
 frequently act carelessly, and when such action is
 foreseeable as an intervening agency, it will not relieve the
 defendant from responsibility for [its] antecedent
 misconduct.” Murray v. Atl. Coast Line R. Co., 218 N.C.
 392, 411, 11 S.E.2d 326, 339 (1940) (citation omitted).

 5. The Commission concludes that defendant’s
 stipulated breach of its duty to install a traffic signal at the
 Riverpointe intersection was a proximate cause of the
 accident that resulted in the deaths of Cynthia Furr,
 McAllister Furr Price and Hunter Holt. The Commission
 concludes that the intervening negligence of Mr. Stasko
 and Ms. Atkinson was also a proximate cause of the
 accident, but not the sole proximate cause. As such,
 defendant is not insulated from liability for its negligence.

 13
 HOLT V. NCDOT

 ELMORE, J., dissenting

 I note that the quote in conclusion of law number four represents the

opinion of the authors of Harper’s Law of Torts and Justice Seawell, dissenting, not

our Supreme Court. In conclusion of law number two, the Commission states that

the issue is whether the intervening acts of negligence by Stasko and Atkinson relieve

DOT of its liability for negligence. However, before determining whether DOT is

relieved of its liability, it must first be determined that DOT is liable. In Hester,

quoted by the Commission in conclusions of law two and three, this Court stated,

 In cases involving rearend collisions between a
 vehicle slowing or stopping on the road without proper
 warning signals, and following vehicles, the test most often
 employed by North Carolina courts is foreseeability. The
 first defendant is not relieved of liability unless the second
 independent act of negligence could not reasonably have
 been foreseen. The foreseeability standard should not be
 strictly applied. It is not necessary that the whole sequence
 of events be foreseen, only that some injury would occur.

 Hester v. Miller, 41 N.C. App. 509, 513, 255 S.E.2d 318, 321 (1979) (internal

citations omitted). I disagree with the application of that foreseeability analysis here.

Hester dealt with multiple defendants who were involved in a chain-reaction vehicle

collision. Id. at 512, 255 S.E.2d at 320. I believe the decision in Hester is factually

distinguishable, and the discussion regarding foreseeability generally in an ordinary

negligence case differs from that of foreseeability involving an intervening actor. I

find the analysis in Tise v. Yates Construction Company, Inc., relevant here.

 14
 HOLT V. NCDOT

 ELMORE, J., dissenting

 In Tise, cited by DOT, police officers responded to a call that unknown persons

were tampering with equipment at a construction site. 345 N.C. 456, 457, 480 S.E.2d

677, 678 (1997). When they arrived at the site, the officers did not see any suspects

and did not have any information regarding who to contact about the security of the

equipment, so they left. Id. Later, four individuals went to the construction site and

one of them drove a grader onto the roadway. Id. One of the officers was sitting in

his parked patrol car on the roadway and was crushed by the grader. Id. The owner

of the construction company claimed that the City, through its police department,

negligently handled the initial call, which was a proximate cause of the officer’s

death. Id. at 459, 480 S.E.2d at 679. Our Supreme Court concluded that the officer’s

“injuries caused by the criminal acts of third parties . . . could not have been

foreseeable from the officers’ acts of attempting to disable the grader.” Id. at 461, 480

S.E.2d at 681. It further stated, “The criminal acts in this case were an intervening

cause that relieved the City of any actionable negligence by cutting off the proximate

cause flowing from the acts of the agents of the City in attempting to disable the

grader.” Id. “This superseding cause was a new cause, which intervened between

the original negligent act of the City and the injury ultimately suffered[.]” Id.

 Here, as in Tise, the third-party criminal acts broke the chain of causation set

in motion by DOT’s breached duty. Stasko’s decision to race another vehicle at eighty-

six miles per hour on a residential highway where the speed limit was fifty-five miles

 15
 HOLT V. NCDOT

 ELMORE, J., dissenting

per hour and where both drivers had children in their vehicles cut off the proximate

cause flowing from DOT’s omission.

 The majority, in discounting the relevance of Tise, relies on Riddle v. Artis. In

Riddle, our Supreme Court stated, “ ‘The test by which the negligent conduct of one

is to be insulated as a matter of law by the independent negligent act of another, is

reasonable unforeseeability on the part of the original actor of the subsequent

intervening act and resultant injury.’ ” 243 N.C. at 671, 91 S.E.2d at 896–97 (quoting

Butner v. Spease, 217 N.C. 82, 6 S.E.2d 808 (1940); citing Beach v. Patton, 208 N.C.

134, 179 S.E. 446 (1935)).

 In Beach, Riddick was driving on a highway and was involved in a collision.

Beach, 208 N.C. at 135, 179 S.E. at 446. For some fifteen minutes after the collision,

Riddick’s car remained on the highway. Id. Patton, who was driving at a negligent

rate of speed, was forced to go around Riddick’s car to avoid hitting it. Id. Patton’s

car fatally struck Beach, who was standing on the shoulder on the opposite of the

highway. Id. Beach’s administrator claimed that Riddick’s negligent act of leaving

his vehicle on the highway proximately caused Beach’s death. Id. at 135, 179 S.E. at

446–47. Our Supreme Court stated, to hold that the defendant owed a duty to the

plaintiff

 to foresee that a third person would operate a car in
 such a negligent manner as to be compelled to drive out on
 to the shoulder of the highway in order to avoid a collision
 with a car parked on the opposite side thereof, and thereby

 16
 HOLT V. NCDOT

 ELMORE, J., dissenting

 strike a person standing on the shoulder, would not only
 “practically stretch foresight into omniscience,” Gant v.
 Gant, 197 N.C. 164, 148 S.E. 34 (1929), but would, in effect,
 require the anticipation of “whatsoever shall come to pass.”
 We apprehend that the legal principles by which
 individuals are held liable for their negligent acts impose
 no such far-seeing and all-inclusive duty.

 Id. at 136, 179 S.E. at 447.

 I think most are in agreement that DOT can reasonably foresee that a driver

traveling on its roadways might speed. However, to say that DOT could reasonably

foresee that two drivers would engage in a road race, one vehicle would collide with

another vehicle at eighty-six miles per hour on a fifty-five-miles-per-hour roadway,

the impact causing the second vehicle “to become airborne and flip several times

before landing in the median area” would also “require the anticipation of whatsoever

shall come to pass.” Beach, 208 N.C. at 136, 179 S.E. at 447. To diminish Stasko’s

actions to mere speeding and label them reasonably foreseeable is unfounded. See

Yancey v. Lea, 354 N.C. 48, 53–54, 550 S.E.2d 155, 158 (2001) (noting that gross

negligence has been found where “defendant is driving at excessive speeds” or

“defendant is engaged in a racing competition”). Affirming the Commission’s decision

will lead to an impracticable standard with far-reaching consequences.

 Accordingly, I respectfully dissent from the majority’s opinion. The decision of

the Full Commission should be reversed, and this case should be remanded to the

Full Commission with instruction to affirm the Deputy Commissioner’s decision.

 17
 HOLT V. NCDOT

ELMORE, J., dissenting

 18